IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**JONATHAN DAKOTA JUSTICE**                                              **PLAINTIFF**

V.                              **CASE NO. 2:24-CV-2062**

**CORRECTIONAL OFFICER EMILY HANUSKA**
**(Johnson County Detention Center);**
**CORRECTIONAL OFFICER ELIZABETH WOOLSEY (JCDC);**
**LIEUTENANT SAMANTHA SMITH (JCDC); and**
**JAIL ADMINISTRATOR JERMEY BENNETT (JCDC)**                **DEFENDANTS**

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation ("R&R") (Doc. 29) filed on December 5, 2025, by the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas. On January 13, 2026, Plaintiff Jonathan Dakota Justice filed an Objection to the R&R (Doc. 32), which triggered this Court's *de novo* review of the record.

From February 15 to April 6, 2024, Mr. Justice was incarcerated in the Johnson County Detention Center ("JCDC"). On February 20, he became ill with flu-like symptoms, including fever, chills, body aches, and a productive cough. He testified that he knew he could have submitted a kiosk request to see a doctor at that time but decided against it because he believed he "would be able to pass it in a matter of days, [or] a week or so." (Doc. 26-6, p. 34 (Justice Dep.)). Over time, his condition deteriorated, and he began coughing up blood on or about March 8, 2024. He was transported by two jail officers to the local hospital's emergency room.[1] The following day, March 9, he was diagnosed with

---

[1] These transport officers were identified by Mr. Justice in his deposition as "Cato" and "Santiago." (Doc. 26-6, p. 36). They are not defendants in this case.

1

bacterial bronchopneumonia and prescribed three medications: an antibiotic, an expectorant, and a cough suppressant.[2] Upon discharge, the hospital sent the three prescriptions electronically to a local pharmacy called Rose Drug in Clarksville, Arkansas. Mr. Justice attaches to his Objection a printout from Rose Drug showing the pharmacy's receipt of the prescriptions on March 9. *See* Doc. 32-1.

In February and March 2024, Defendant Hanuska's duties at the JCDC included picking up inmates' prescriptions from the pharmacy, receiving pharmacy deliveries, and packing medications for "pill call." *See* Doc. 26-3, p. 1 (Hanuska Affid.). According to Mr. Justice, Defendants Elizabeth Woolsey and Samantha Smith told him it was against jail policy for anyone other than Defendant Emily Hanuska to pick up inmate medications, which meant that Mr. Justice's family members could not pick up the prescriptions and drop them off at the jail. Officer Hanuska claims she "do[es] not recall being provided [Mr. Justice's] Johnson County Emergency Room Documents" or "receiv[ing] [Mr. Justice's] medications] in any of [her] normal pickups from the pharmacy." *Id.* at pp. 1–2.

Mr. Justice went without these medications for approximately three weeks after the hospital visit. By then his fever had gone away, and his only remaining symptom was a persistent cough. *See* Doc. 26-6, p. 40 (Justice Dep.). He testified that he did not immediately submit an electronic kiosk complaint about the lack of medicine—though he knew how to use the kiosk and had submitted similar complaints on other topics—because he wanted to give the jail "the benefit of the doubt." *Id.* at p. 46. He claims he

---

[2] Mr. Justice stated explained that according to the hospital, the reason why he had coughed up blood was because he "had coughed so hard and so much" over the past two weeks that he "ruptured the capillaries in the top of [his] lungs." (Doc. 26-6, p. 39 (Justice Dep.)).

orally informed several of his jailers about the problem, including Lieutenant Smith. According to Mr. Justice, Lieutenant Smith supposedly investigated and said, "As far as I know, you don't have any prescriptions that need to be picked up." *Id.* at p. 76.

On March 29, 2024, Mr. Justice's patience wore off, and he submitted a kiosk grievance about the missing medications. *See* Doc. 26-1, p. 25. Three days later, on April 1, the JCDC transferred responsibility for inmate health care to an outside provider called TurnKey Medical.[3] Nevertheless, it was Officer Hanuska who responded to the March 29 kiosk grievance by marking it "Closed" on April 4—even though Mr. Justice had still not received his medications. *Id.* Officer Hanuska explains in her Affidavit that she cannot recall reviewing the grievance but does not deny that she did. *See* Doc. 26-3, p. 2. Two days later, on April 6, 2024, Mr. Justice was transferred to the Crawford County Detention Center ("CCDC"). There he received cough drops to treat his cough. *See* Doc. 26-6, p. 48 (Justice Dep.). He also saw a doctor at the CCDC to renew his blood pressure medication, and during the same visit was prescribed "some antibiotics" for any lingering cold symptoms. *Id.*

The Magistrate Judge's R&R opines that Mr. Justice failed to establish a violation of his constitutional rights due to Defendants' deliberate indifference to his serious medical needs. Mr. Justice disagrees. In his Objection to the R&R, he explains that all Defendants knew he had been diagnosed with bronchopneumonia and had been

---

[3] Mr. Justice's kiosk records confirm that on April 4, 2024, a TurnKey nurse responded to his grievance about a refill of his blood pressure medication. Apparently, he had been receiving the medicine daily at the JCDC, but because the refill had not yet arrived, Mr. Justice had gone without it for two days. *See* Doc. 26-1, p. 21. The nurse responded that she was "waiting on delivery from the pharmacy." *Id.*

3

prescribed medications but "failed to retrieve and administer the prescriptions for nearly a month, even after Plaintiff filed a grievance." (Doc. 32). For this reason, Mr. Justice believes his Complaint should survive summary judgment.

The deliberate indifference analysis under 42 U.S.C. § 1983 involves "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). With regard to the subjective prong of the analysis, "the prisoner must show more than negligence [and] more even than gross negligence." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. *See Foulks v. Cole Cnty.*, 991 F.2d 454, 455–57 (8th Cir. 1993) (finding jailers liable where jailers disregarded instruction sheet from doctor, ignored complaints of sickness and pain, and refused to provide medication they were aware was prescribed); *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795–96 (8th Cir. 2006) ("[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference.").

Beginning with the subjective part of the analysis, the Court agrees with Mr. Justice that there is sufficient evidence in the record to create a genuine, material question of fact regarding Defendants' knowing failure to administer the medicine he was prescribed at the hospital. Though none of the Defendants actually transported Mr. Justice to and from the hospital, that fact cannot possibly absolve them of liability, as his hospital record,

which included the names of the three prescriptions ordered by the hospital and sent to the pharmacy, *see* Doc. 16-1, pp. 6–13, was available in his electronic jail file for all who cared to see. Furthermore, the Court assumes as true for purposes of summary judgment Mr. Justice's claim that he orally complained to all Defendants multiple times over the course of a month about his missing medications. Mr. Justice also maintains that Lieutenant Smith actually investigated his oral complaint and falsely told him there were no medications to pick up, and it is undisputed that Officer Hanuska closed the kiosk grievance without acknowledging that Mr. Justice never received his medications.

Turning now to the objective part of the analysis, the Court agrees with the Magistrate Judge that when Mr. Justice presented to the emergency room with bronchopneumonia on March 8–9, 2024, he had an objectively serious medical need. However, Mr. Justice's deliberate indifference claim focuses on Defendants' delay in providing him the medications prescribed by the hospital upon discharge. *See also* Objection, Doc. 32 (characterizing his claim as "intentional interference with prescribed treatment"). According to the Eighth Circuit, "where . . . an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025) (citation modified). "In other words, if a plaintiff is relying on a delay in treatment theory, there is an additional requirement to place verifying medical evidence in the record to show there was a detrimental effect caused by the delay." *Id.* at 843–44 (quoting *Cheeks v. Belmar*, 80 F.4th 872, 878 (8th Cir. 2023)).

Mr. Justice admitted in his deposition that he has no permanent injuries as a result of Defendants' delay in supplying his medicine, and that no doctor has diagnosed him with lasting injuries. *See* Doc. 26-6, p. 80 (Justice Dep.). He also testified that by the time he left the hospital on March 9, 2024, he had received a steroid shot and "had already quit running a fever." *Id.* at pp. 39–40. His only remaining symptom was a cough. *See id.* at pp. 43, 47. Therefore, the summary judgment evidence viewed in the light most favorable to Mr. Justice fails to raise a genuine, material dispute that Defendants' delay in providing him the prescribed medications had a detrimental effect on his overall health. To the extent he alleges the detrimental effect was a nagging cough, this does not qualify as an objectively serious medical need. *See Martinson v. Leason*, 22 F. Supp. 3d 952, 963 (D. Minn. 2014) (noting that cold symptoms, including cough and headache, do not qualify as objectively serious medical needs and listing cases). As there is no jury issue on deliberate indifference, the case must be dismissed.

**IT IS THEREFORE ORDERED** that Mr. Justice's Objection is **OVERRULED**, and the R&R (Doc. 29) is **ADOPTED IN PART, AS CLARIFIED HEREIN**. Defendants' Motion for Summary Judgment (Doc. 24) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Court will enter a separate Judgment.

**IT IS SO ORDERED** on this 9th day of February, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE